UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RICHARD GARCIA,

    Plaintiff,

v.

NESTLE USA, INC, KARTHIK SHETTY, ROGER PALPANT, DOES 1 THROUGH 25

    Defendants.

No. C 23-06199 WHA

**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND AND RESERVING DEFENDANT'S MOTION TO DISMISS**

## INTRODUCTION

In this disability discrimination and harassment suit, a former employee moves to remand the action to state court for lack of complete diversity. Defendant employer and individual supervisors oppose, arguing fraudulent joinder. Defendants separately move to dismiss plaintiff's seventh claim for relief, which alleges employment harassment in violation of California's Fair Employment and Housing Act. For the reasons stated herein, plaintiff's motion to remand is **GRANTED**.

## STATEMENT

Plaintiff Richard Garcia, an ex-employee of defendant Nestle USA, Inc., brought this action in the County of Monterey Superior Court against defendants Nestle USA, Inc. and two supervisors. Plaintiff pleaded a single claim for relief against the supervisors, alleging harassment in violation of FEHA (plaintiff's seventh claim for relief). Defendants removed

this action on the ground that the non-diverse supervisors were sham defendants fraudulently joined for the purpose of defeating diversity. Plaintiff now moves to remand to state court, arguing that defendants have not shown complete diversity. Defendants, meanwhile, move to dismiss plaintiff's claim for harassment in violation of FEHA.

Sweet Earth, Inc., later purchased by defendant Nestle, hired plaintiff in July of 2016. Plaintiff worked as a facility and grounds keeper. Over the course of his employment, plaintiff received four raises from Sweet Earth and Nestle in recognition of his good performance and work ethic. In June of 2019 a defendant supervisor instructed plaintiff and several others to move an industrial "bowl chopper" up a sloped ramp. Plaintiff was seriously injured as a result. Doctors eventually found that his injury had caused his spinal cord to leak cerebrospinal fluid, that he had a herniated disk, and that he suffered from severe degenerative disk disease. Plaintiff could not lay down or sleep for any length of time without experiencing severe pain.

Due to his injury, defendants placed plaintiff on "light duty." Over the next few months, defendant supervisors asked plaintiff to perform electrical work that he was not licensed or certified to perform. Nevertheless, they repeatedly assigned plaintiff to electrical duties and eventually charged plaintiff with performing the "lock-out-take-out" safety protocol for the facility's electrical panels, which required plaintiff to lock the panels and remove the key accompanying the lock.

In February of 2022, plaintiff informed Nestle's HR that he would be undergoing scheduled surgery as a result of his back injury. Two days prior to his surgery, defendant supervisors confronted plaintiff about having left a key in an electrical panel lock. This was the first time plaintiff had forgotten a key in a panel lock, while Nestle supervisors regularly bypassed the normal safety protocols and left the panels unlocked. Indeed, other employees had made the same mistake several times prior without facing disciplinary action. On March 17, 2022, the day of his back surgery, Nestle terminated plaintiff. Plaintiff alleges that he suffered harassment, abuse, embarrassment, and termination because of his disability.

For the reasons stated below, plaintiff's motion to remand is **GRANTED**.

**ANALYSIS**

Defendants may remove cases to federal court only if the federal court would have had original jurisdiction over the suit. 28 U.S.C. § 1441. "The diversity jurisdiction statute, as construed for nearly 200 years, requires that to bring a diversity case in federal court against multiple defendants, each plaintiff must be diverse from each defendant." *Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997, 1004 (9th Cir. 2001). Under the fraudulent joinder doctrine, a non-diverse defendant's citizenship may be ignored for purposes of subject matter jurisdiction if "the plaintiff fail[ed] to state a cause of action against [the] resident defendant, and the failure is obvious according to settled rules of the state." *McCabe v. Gen. Foods. Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987) (citation omitted). "[T]he courts must resolve all disputed questions of fact and all ambiguities in the controlling state law in favor of the non-removing party." *Plute v. Roadway Package Sys., Inc.*, 141 F. Supp. 2d 1005, 1008 (N.D. Cal. 2001) (Judge Susan Illston) (internal quotation omitted).

"[T]he test for fraudulent joinder and for failure to state a claim under Rule 12(b)(6) are not equivalent. A claim against a defendant may fail under Rule 12(b)(6), but that defendant has not necessarily been fraudulently joined." *Grancare*, 889 F.3d 543, 549 (9th Cir. 2018). To prevail on fraudulent joinder, "defendant must show the absence of *any possibility* of recovery." *Ibid*. (internal quotation omitted) (emphasis added). The standard is similar to the "wholly insubstantial and frivolous" standard of Rule 12(b)(1) – a far more stringent test than Rule 12(b)(6). *Id.* at 549-550.

The undersigned judge has further stated in the past that "[r]emand shall be granted unless the defendant can show that the plaintiff would not be afforded leave to amend his complaint to cure the purported deficiency." *Grancare, LLC v. Thrower*, No. C 15-05362 WHA, 2016 WL 1082780 (N.D. Cal. Mar. 21, 2016), aff'd sub nom. *Grancare, LLC v. Thrower by & through Mills*, 889 F.3d 543 (9th Cir. 2018); *Vincent v. First Republic Bank Inc.*, Case No. 10-cv-1212, 2010 WL 1980223 at *3 (N.D. Cal. May 17, 2010).

Plaintiff advances a single claim against the supervisors for harassment in violation of FEHA. "To establish a claim for harassment, a plaintiff must demonstrate that: (1) plaintiff is

1   a member of a protected group; (2) plaintiff was subjected to harassment because he belonged
2   to this group; and (3) the alleged harassment was so severe that it created a hostile work
3   environment." *Gardner v. City of Berkeley*, 838 F. Supp. 2d 910, 926 (N.D. Cal. 2012) (Judge
4   Edward Chen) (internal quotation omitted).

5   "California law distinguishes between discriminatory employment actions and
6   harassment." *Wexler v. Jensen Pharm., Inc.*, No. CV1503518ABAJWX, 2015 WL 6159101,
7   at *5 (C.D. Cal. Oct. 20, 2015) (Judge Andre Birotte). "[O]nly an employer – and not
8   individuals – can be held liable for discriminatory employment actions, typically through a
9   claim for employment discrimination. By contrast, an individual employee, in addition to an
10  employer, can be held liable for harassment." *Ibid*. *Janken* laid out the crux of the distinction
11  between discrimination and harassment:

> the Legislature intended that commonly necessary personnel management actions such as hiring and firing, job or project assignments, office or work station assignments, promotion or demotion, performance evaluations, the provision of support, the assignment or nonassignment of supervisory functions, deciding who will and who will not attend meetings, deciding who will be laid off, and the like, do not come within the meaning of harassment. These are actions of a type necessary to carry out the duties of business and personnel management. These actions may retrospectively be found discriminatory if based on improper motives, but in that event the remedies provided by the FEHA are those for discrimination, not harassment. Harassment, by contrast, consists of actions outside the scope of job duties which are not of a type necessary to business and personnel management. This significant distinction underlies the differential treatment of harassment and discrimination in the FEHA.

21  *Janken v. GM Hughes Electronics*, 46 Cal.App.4th 55, 64-65 (1996). In contrast to conduct
22  related to management or supervision of the employer's business, "harassment consists of
23  conduct outside the scope of necessary job performance, conduct presumably engaged in for
24  personal gratification, because of meanness or bigotry, or for other personal motives." *Id.* at
25  63. "[T]he exercise of personnel management authority properly delegated by an employer to
26  a supervisory employee might result in discrimination, but not in harassment." *Id.* at 64.

27  In *Pineda*, for example, plaintiff alleged that a non-diverse defendant-supervisor had
28  "depriv[ed] [plaintiff] of a deserved bonus, issu[ed] undeserved negative performance

4

evaluations, and provid[ed] information to [supervisors] who in turn issued [plaintiff] a PIP." *Pineda v. Abbott Lab'ys, Inc.*, No. 218CV03395SVWRAO, 2018 WL 3487111 at *3 (C.D. Cal. July 18, 2018), aff'd, 831 F. App'x 238 (9th Cir. 2020). *Pineda* denied remand and granted defendant's motion to dismiss because plaintiff's allegations amounted to "commonly necessary personnel management actions that may give rise to a claim against an employer for employment discrimination, but that do not give rise to a claim against an employee for harassment." *Ibid*. *Wexler* likewise denied a motion to remand because the actions attributed to the non-diverse defendant-supervisor –assigning and redistributing plaintiff's work, expanding plaintiff's job responsibilities, and issuing plaintiff a corrective action plan and PIP – were the kind of management action "that may give rise to a claim against an employer for employment discrimination, but that do not ordinarily give rise to a claim against another employee for harassment." *Wexler*, 2015 WL 6159101, at *5.

Here, plaintiff alleges the following misconduct against the supervisor defendants: (1) one instructed plaintiff to manually move heavy machinery, resulting in an injury to plaintiff's back; (2) both subsequently assigned plaintiff to perform electrical work at the facility, despite his lack of certification or licensing; (3) both confronted plaintiff about his violation of a safety protocol that others were not disciplined for (First Amd. Compl. ¶¶ 14, 17, 21).

Defendants argue that all of these actions, taken as true, are the kinds of "commonly necessary personnel management actions" that may give rise to a discrimination claim against an employer, but do not give rise to a harassment claim against another employee. While there may be times that management actions are themselves harassing, the argument goes, plaintiff asserts no additional facts against the supervisors that might support such a conclusion. Indeed, plaintiff's original complaint asserted a discrimination claim against the supervisors. Only when defendants filed a demurrer correctly asserting that individual employees cannot be liable for discrimination as a matter of law did plaintiff amend his complaint to plead harassment instead.

The possible fraudulent joinder of the individual supervisors would raise serious concerns. As *Wexler* stated:

5

> honoring the discrimination-harassment distinction has important consequences where, as here, it appears that a plaintiff has haled a non-diverse individual defendant into court based on unviable state law claims, simply to secure a state court forum. Threatening an individual with liability that should properly attach to his employer because it is based on employment-related activity subverts the logic of FEHA. Plaintiffs who engage in such tactics should not be rewarded with their preferred forum.

*Wexler*, 2015 WL 6159101 at *6.

Nevertheless, acts that appear to be "personnel management actions" may, in context, constitute evidence of harassment. *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 707 (2009), as modified (Feb. 10, 2010). In *Roby*, the California Supreme Court explained that "[a]lthough discrimination and harassment are separate wrongs, they are sometimes closely interrelated, and even overlapping, particularly with regard to proof." *Ibid*. In *Miller*, for example, widespread sexual favoritism in the form of promotions and favorable job assignments (quintessential "personnel management actions") underpinned a *prima facie* case of harassment, because the managerial *action* communicated a demeaning (and harassing) *message* to women in the workplace. *Miller v. Dep't of Corr.*, 36 Cal. 4th 446, 460-66 (2005); *Roby*, 47 Cal. 4th 708 ("*Miller,* however, makes clear that in some cases the hostile message that constitutes the harassment is conveyed through official employment actions, and therefore evidence that would otherwise be associated with a discrimination claim can form the basis of a harassment claim.").

Viewed in context, plaintiff's allegations may reach beyond the kind of "personnel management actions" typically immune to a FEHA harassment claim. In *Christ*, for example, the plaintiff contended that, as part of defendant supervisor's scheme to replace older drivers with younger, lower-salary drivers, plaintiff was assigned more difficult, and at times impossible, mileage goals, was then reprimanded when unable to meet those goals, and was disciplined and ultimately terminated over an otherwise innocent workplace interaction. *Christ v. Staples, Inc.*, No. CV 14-07784 MMM JEMX, 2015 WL 248075, at *6 (C.D. Cal. Jan. 20, 2015). Here, plaintiff alleges that (1) after he was placed on light duty the supervisors repeatedly assigned him electrical work that he was not licensed or certified to perform, despite

6

his continued protestations; (2) in performing that electrical work, plaintiff was reprimanded by the supervisors for a policy violation that was otherwise common practice among peers and supervisors; and (3) that he was ultimately terminated on the very day he was being prepped for his surgery. Taken in the light most favorable to plaintiff, there is a possibility that a state court may find that "at least some of the actions purportedly taken were not strictly personnel management decisions" or otherwise conveyed a hostile message to plaintiff, and on that basis grant leave to further amend. *Christ* 2015 WL 248075, at *6 (quoting *Hale v. Bank of Am.*, N.A., No. CV 12–10064 MMM, 2013 WL 989968, *5 (C.D.Cal. Mar.13, 2013)).

At oral argument, defendants pointed to the California Supreme Court's statement in *Reno* that "commonly necessary personnel management actions . . . do not come within the meaning of harassment." *Reno v. Baird*, 18 Cal. 4th 640, 646-647 (1998). *Reno*, however, predates both *Miller* and *Roby*, discussed above. In fact, *Roby* addressed the California court of appeal's reliance on that very passage of Reno, which the lower court read "as indicating a sharp distinction that not only placed discrimination and harassment claims into separate legal categories but also barred a plaintiff from using personnel management actions as evidence in support of a harassment claim." *Id.* at 701. Accordingly, following a jury verdict for plaintiff on harassment and discrimination, the court of appeal "disregarded every act of defendants that could be characterized as personnel management, and, looking only at the remaining evidence, the court found it insufficient to support the jury's harassment finding." *Ibid*. The California Supreme Court held that reading to be error and reversed, stating that "discrimination and harassment claims can overlap as an evidentiary matter . . . . nothing prevents a plaintiff from proving these two violations with the same (or overlapping) evidentiary presentations." *Id.* at 709. It is disappointing that the parties' briefing omits *Roby* and *Miller* entirely.

This order does not hold that plaintiff *has* made out a harassment claim, only that the facts currently alleged in plaintiff's complaint may, upon further amendment, form the basis of a colorable harassment claim, as well as a discrimination claim.

Likewise, the present iteration of plaintiff's harassment claim may not survive a motion to dismiss. It need not. The burden is on defendants to show the absence of "any possibility"

7

of recovery. They have failed to do so. A state court may find plaintiff's factual allegations and proffer sufficient to warrant leave to amend. This order must therefore afford the state court the opportunity to make that decision and remand the litigation.

## CONCLUSION

For the foregoing reasons, plaintiff's complaint is **REMANDED** to the County of Monterey Superior Court. However, if plaintiff's harassment claim against the supervisors is dismissed without leave to amend in the state proceedings, defendants may then (timely) remove the action back here. Because there is, at present, no federal jurisdiction in the underlying action, defendant's motion to dismiss is **RESERVED** to the state court for decision.

**IT IS SO ORDERED.**

Dated: March 1, 2024

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE